# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**RAYMONE DUVAL WINDLESS,**                                                       **PETITIONER**

**V.**                                                   **NO. 2:05CR0024-WAP**

**UNITED STATES OF AMERICA,**                                     **RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255. The Government has responded and a limited evidentiary hearing was held. This matter is now ripe for review.

*A. Factual and Procedural Background*

On February 24, 2005, Windless was indicted for possession with intent to distribute in excess of five grams of crack cocaine. On May 18, 2005, with the assistance of Attorney Whit Mounger, Windless pled guilty to the one-count indictment. On October 25, 2005, after his objections to the presentence report were overruled, Windless was sentenced to 188 months imprisonment. Judgment was entered on November 7, 2005. Windless did not appeal his conviction or sentence but instead filed a *pro se* motion to withdraw his guilty plea, which was denied.

On October 23, 2006, Windless filed his § 2255 motion asserting essentially four grounds for relief. Windless' claims are as follows:

    Ground One            The court erred by calculating his sentence incorrectly which resulted in his status as a career offender;

    Ground Two           The indictment was defective and thus the court lacked jurisdiction;

Ground Three    Counsel failed to provide an adequate defense; and

Ground Four     Counsel failed to perfect an appeal.[1]

## B. Standard for Review

After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *U.S. v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Accordingly, relief under 28 U.S.C. § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *U.S. v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). Once a sentence of imprisonment has been imposed, the court's authority to reduce or modify the sentence is limited. *U.S. v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994). A criminal defendant seeking relief from his conviction or sentence in a motion to vacate pursuant to § 2255 must therefore establish one of the following: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *U.S. v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

It has long been held that "a challenge under section 2255 may not do service for an appeal, a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both cause for his procedural default and actual prejudice resulting from the error." *U.S. v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) (citations omitted). Nevertheless, a claim

---

[1] An evidentiary hearing was held on August 14, 2008, limited to only this issue. In accordance with Rule 8© of the Rules governing § 2255 proceedings, Attorney Christi McCoy was appointed to represent Windless at the hearing. Attorney McCoy did not represent Windless at any other stage of the criminal proceedings.

of ineffective assistance of counsel does give rise to a constitutional concern which, if proven, is sufficient to establish the cause and prejudice necessary to overcome a procedural default. *Id.* at 934.

## C. Ineffective Assistance of Counsel

Each of Windless' grounds for relief is based upon the effectiveness of his attorney. When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976). In order to demonstrate ineffective assistance of counsel, a defendant must satisfy the two part test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

A petitioner must satisfy *both* prongs of the *Strickland* test to succeed. *Id.* at 687.

## C. Discussion

<u>Ground One: Guideline Calculation</u>

Windless' first assignment of error is that the court placed him in the wrong criminal history category and offense level with regard to the Sentencing Guidelines which resulted in him being labeled a career offender.

As a threshold matter, claims that do not implicate the constitution which could have been

raised on direct appeal, but were not, may not be asserted in a collateral proceeding. *U.S. v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). The technical application or miscalculation of the Sentencing Guidelines does not give rise to a constitutional issue and is thus not cognizable under § 2255. *U.S. v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991). To the extent, however, Windless alleges his sentence was the result of ineffective counsel the court will address his claim.

Windless asserts that his Guidelines range should have been calculated based upon a criminal history category of IV and an offense level of 23 resulting in a guideline range of 70-87 months. Windless never explains how he arrived at these calculations. Windless does, however, argue that two prior convictions should have counted as only one conviction because he was sentenced on the same day for each crime and the sentences were served concurrently. Accordingly, he concludes, he should not have been considered a career offender.

The career offender section of the United States Sentencing Guidelines provides in part:

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection ©, if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| © 20 years or more, but less than 25 years | 32 |

. . .

4

*If an adjustment from 3E1.1 (Acceptance of Responsibility) applies, decrease
the offense level by the number of levels corresponding to that adjustment.

U.S.S.G. § 4B1.1(b). A felony conviction is any "offense punishable by death or a term of imprisonment exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 cmt. n.1.

The presentence report attributed, *inter alia*, two prior felony convictions for possession of a controlled substance with intent to distribute to Windless. The first offense occurred on August 16, 1992, and the second occurred on November 11, 1992. *See* Presentence Report ¶¶ 53 and 59. The two offenses were consolidated for purposes of plea and sentencing. *Id.* Windless received five years of imprisonment for each offense to run concurrently. *Id.* Thus, as noted above, Windless argues that these two convictions are related and should only count as one for purposes of calculating a guideline range.

Section 4A1.2(a)(2) of the Sentencing Guidelines states that "prior sentences imposed in unrelated cases are to be counted separately." Comment 3 to this section reads, "prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or © were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 cmt. n.3.² Windless' claim is premised on section © of the comment

---

² The language quoted above was applicable in 2005 when Windless was sentenced. Section 4A1.2, however, was amended in 2007 to clarify when multiple sentences can be counted separately or as a single sentence. Comment note 3 was also replaced with the "Upward Departure Provision." The amendment is not considered retroactive and would not have changed the result herein because of the November 11, 1992 "intervening arrest." *See U.S. v. Godin*, 522

above. Windless, however, fails to appreciate the effect of the "intervening arrest."

Windless was first arrested for conduct which occurred on August 16, 1992. While the disposition of those charges were pending, Windless was subsequently arrested on November 11, 1992–the intervening arrest. *See U.S. v. Gale*, 468 F.3d 929, 936 (6th Cir. 2006) ("only if there was no intervening arrest may the court consider the factors that may otherwise render prior sentences related."). The intervening arrest precludes a finding of relatedness. Even if Windless had been able to overcome the intervening arrest, he still has failed to show that the two convictions were otherwise related. The arrests obviously did not occur on the same occasion nor was this conduct part of a single common scheme or plan. Indeed, Windless offers no contradictory argument. *U.S. v. Gonzales*, 202 Fed. Appx. 748, 749, 2006 WL 2985800 at *2 (5th Cir. Oct. 18, 2006) (the court need not consider "relatedness" if the convictions are separated by an intervening arrest).

Although the cases were consolidated for sentencing purposes, this fact alone does not require a finding of "relatedness" under the guidelines as they existed when Windless was sentenced in this court. *U.S. v. Hayes*, 353 F.3d 349, 354 (5th Cir. 2008) (sentencing on the same day and in the same proceeding as well as imposition of identical concurrent sentences does not warrant, by themselves, a finding of consolidation or relatedness). Thus, the presentence report as adopted by the court considered the convictions separately and determined that Windless met the definition of a career offender within the meaning of Section 4B1.1.[3] Given Windless' status as a career offender, the criminal history category and offense level were dictated by section 4B1.1(b) of the sentencing

---

F.3d 133, 134-35 (1st Cir. 2008).

[3] Windless does not challenge that he was at least eighteen years old and that the instant conviction is a controlled substance offense, or that the two underlying convictions are felonies.

guidelines. According to the guidelines quoted above, as a career offender, Windless' criminal history category was a VI and his offense level was a 31[4] (after deducting three points for acceptance of responsibility), yielding a sentencing range of 188 to 235 months imprisonment. He was sentenced to 188 months–the lowest possible sentence under the advisory guidelines.

Returning to the basis of the claim as it relates to counsel's performance, the court concludes that Windless' attorney tendered able and zealous representation given the facts of this case. Indeed, defense counsel set forth this very argument at the sentencing hearing. Sent. Tr. pp. 3-13 (Oct. 25, 2005); Def. Objections (Aug. 10, 2005). Although the court rejected Attorney Mounger's attempts to demonstrate that the previous felony convictions were factually related, Windless cannot now assert that his attorney was deficient because the objection was overruled. *Id.* at p. 13:9-22. Therefore, Ground One is unavailing for a variety of reasons.

Ground Two: The Validity of the Indictment

Windless next asserts that the court lacked jurisdiction because of the omission of an essential element of the charged offense which rendered the indictment defective. Windless contends that a specific quantity of drugs was fatally missing from the indictment. The one count indictment charged that "defendant, knowingly and intentionally possessed with intent to distribute in excess of 5 grams of a mixture and substance containing cocaine base, crack cocaine . . . in violation of Title 21 United States Code, Section 841(a) and (b)(1)(B)."

An indictment is sufficient if it (1) contains the elements of the offense charged; (2) fairly informs a defendants of the charge against him; and (3) enables him to plead acquittal or conviction

---

[4] Section 4B1.1(b)(B) dictates an offense level of 34 for offenses with a statutory maximum penalty of 25 years or more. The statutory maximum sentence for violation of 21 § U.S.C. 841(a) is not more than forty years. *See* 21 U.S.C. § 841(b)(1)(B).

7

in bar of future prosecutions for the same offense. *U.S. v. Hagmann*, 950 F.2d 175 (5th Cir. 1991). The validity of an indictment depends on "whether it conforms to minimal constitutional standards." *U.S. v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984). A defective indictment is not a matter appropriate for federal habeas relief unless it can be shown that the indictment was "so fatally defective that under no circumstances could a valid conviction result from the facts provable under the indictment." *Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir. 1991). A defective indictment does not deprive a court of jurisdiction. *U.S. v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

The United States Supreme Court held in *Apprendi*, that any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum, must be alleged in the indictment, submitted to the jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi*, however, requires reversal of a sentence only in those cases where the sentence imposed by the court exceeds the statutory maximum. *U.S. v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000).

Windless' claim fails for two reasons. First, he was sentenced well below the statutory maximum of forty years imprisonment. Thus, the rule announced in *Apprendi* has not been violated. *U.S. v. Moreci*, 283 F.3d 293, 299 (5th Cir. 2002). Second, the absence of a specific drug quantity does not render the indictment defective. In fact, the Supreme Court rejected this very argument in *Cotton* when it held that a "detectable amount" of crack as charged in the indictment was sufficient to withstand scrutiny. *Cotton*, 535 U.S. at 631.

The indictment *sub judice* was appropriately detailed containing each element of the offense charged and fairly informing Windless of the possible maximum sentence he faced. *See U.S. v.*

*Olness*, 9 F.3d 716, 717 (8th Cir. 1993) (despite fact that indictment did not allege the specific amount of cocaine base involved did not invalidate the indictment; rather drug quantity is not an element of the offense but a sentencing factor). Since the law does not require that a precise quantity of drugs be contained in the indictment, Attorney Mounger cannot be deemed ineffective for failing to object or challenge the drug quantity range contained in the indictment. Therefore, Ground Two does not provide an appropriate basis for habeas relief.

Ground Three: Attorney's Prediction of Sentencing Range

Windless contends his attorney was ineffective in practically every way imaginable under the law. The court, however, does not intend to address every issue Windless attempts to create by using conclusory language and reciting legal terms. *U.S. v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("conclusory allegations on a critical issue are insufficient to raise a constitutional issue."). Despite the broad implications of his argument, Windless is essentially claiming that the guilty plea is invalid because Attorney Mounger mislead him as to the length of the sentence that might be imposed.[5] Windless states that he was led to believe his sentencing range would be between 70 and 87 months imprisonment.

"The Constitution requires that a defendant be advised and understand the consequences of a guilty plea." *U.S. v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as the [defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Id.* (quoting *Barbee v. Ruth*, 678

---

[5] Indeed, the court denied similar attempts by Windless to withdraw or call into question the validity of his guilty plea in a memorandum opinion on August 5, 2008.

F.2d 634, 635 (5th Cir. 1982)). It has long been held that and attorney's incorrect prediction of the application of the guidelines does not constitute ineffective assistance of counsel. *U.S. v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). Even if counsel incorrectly stated the maximum sentence of imprisonment, the error can be cured by imparting correct information in the plea agreement or at the plea hearing. *See U.S. v. Green*, No. 06-60706, 220 Fed. Appx. 346, 347-48 (5th Cir. Mar. 5, 2007).

Here, the indictment correctly identified the maximum statutory penalties associated with the violation charged. As to count one, Windless was clearly informed that he faced "NL than 5 NM than 40 years incarceration . . ." Windless stated in open court that he had received a copy of the indictment and that he understood the charges. Plea Hrg. Tr. p.7:7-9 and p.8:4-15 (May, 18, 2005). The written plea agreement also plainly stated that the charged offense carried "maximum possible penalties of not less than 5 years and not more than 40 years imprisonment . . ." Additionally, the plea agreement provided that there was no agreement as to the sentence to be imposed, that the guidelines would apply, and that the agreement was knowing, free and voluntary.

During the plea hearing, the court instructed Windless as to the maximum possible sentence of "no more than 40 years incarceration." Plea Hrg. Tr. p.11:1-9. Windless was admonished that "the court will not be able to determine the recommended or the advisory guideline sentence of your case until after the presentence report has been completed . . . and that the sentence imposed may be different from any estimate your attorney may have given you." Plea Hrg. Tr. p.14:20-25 to 15:1-3. More importantly the court stated, "I can sentence you up to the maximum that's allowed under the statute. Do you understand that?" Plea Hrg. Tr. p.15:18-20. Windless indicated he understood. Plea Hrg. Tr. p.15:21. The court additionally cautioned Windless that the sentence ultimately

imposed could be more or less severe than the guideline range and that if the sentence was higher than expected he would not be allowed to withdraw the guilty plea. Plea Hrg. Tr. p.16:14-25. Windless also stated that no one made any prediction or promise as to the length of sentence he would receive. Plea Hrg. Tr. p. 17:14-16.

Based on the information conveyed and statements made in open court, there can be no doubt that Windless was fully informed of the consequences of the guilty plea including the maximum statutory penalty and the possibility that a more harsh sentence could be imposed. Formal declarations in open court are entitled to a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). To the extent Windless' claim is based on his attorney's failure to accurately predict the length of his sentence[6], his claim must fail. Even if Attorney Mounger estimated an incorrect sentencing range, Windless cannot maintain his claim of ignorance in light of the foregoing discussion.

Furthermore, at the plea hearing the court asked, "Are you satisfied with your attorney's representation of you; that is, do you believe that he has competently represented your best interest in this matter?" Plea Hrg. Tr. p. 5:2-5. Windless answered affirmatively indicating his approval of counsel's advice. *Id.* The court will not now hear Windless' claims of ineffective assistance premised upon lack of notice regarding the maximum sentence which is contradicted by statements in open court. Although a defendant's attestations of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *U.S. v. Diaz*, 733 F.2d

---

[6] Attorney Mounger admitted that he probably gave Windless an inaccurate estimated sentencing range. Hrg. Tr. pp. 48:2 to 49:11 (Aug. 14, 2008). The estimate, however, was based on erroneous information given to Mounger by Windless about past convictions. *Id.* Windless presumed that he had only one prior felony conviction, but as discussed at length *supra* there were actually two felony convictions.

371, 373-74 (5th Cir. 1979). Windless cannot show that his plea was invalid because he was unaware of the possible maximum sentence.

Ground Four: Failure to Perfect an Appeal

Windless' last claim is that, despite a request, counsel failed to perfect an appeal. Since there is no dispute that no appeal was taken, Windless must only show that he timely requested an appeal. *U.S. v. Tapp*, 491 F.3d 263 (5th Cir. 2007). Given the absence of information in the record, an evidentiary hearing was held on August, 14, 2008, regarding this issue. *Id.* (vacating dismissal of 2255 motion and remanding for evidentiary hearing as to whether defendant requested his counsel file an appeal).

*Summary of the Evidence*

At the hearing, there were only two witnesses– Windless who was the first to testify and Attorney Whit Mounger. Windless stated that on the day of sentencing while still standing in front of the court he turned to Mounger and said that he wanted to appeal. Hrg. Tr. p. 7:18-20. On cross examination, however, Windless explained that he turned to Mounger after the sentence was pronounced and "whispered to him, . . . I want to appeal." Hrg. Tr. p. 20:7-9. Windless admitted that his request was not loud and that he was not sure Mounger even heard him. Hrg. Tr. pp. 21:18-19 to 22:7-9. Mounger did not deny that Windless may have whispered his request for appeal on the day of sentencing. Hrg. Tr. p. 45:1-6. But, Mounger was insistent that he did not hear any such request on that occasion. *Id.*

After sentencing, Windless was transported to Lafayette Country Jail where he allegedly attempted to call Mounger "about four times" but reached a secretary only once and left a message. Hrg. Tr. p. 9:19-24. Mounger explained that his secretary, with whom Windless allegedly left a

12

message, is also his wife and she had no memory or evidence of any communication with Windless following sentencing. Hrg. Tr. p. 51:4-13. Prior to sentencing, Mounger recalled that Windless had utilized the phone, fax and mail as means of communicating. Hrg. Tr. p. 51:14-17.

Windless maintained that he also tried to reach Mounger by writing a letter or letters but received no response. Hrg. Tr. pp. 9:25 to 10:2. He, further, stated that he mailed a hand written motion to appeal his sentence to the court and Mounger a few weeks after being sentenced. Hrg. Tr. pp.14:15 to 15:7. The purported motion to appeal was actually a "motion to withdraw plea of guilt" filed on December 13, 2005.[7] Hrg. Tr. pp. 36:16 to 37:20. Nevertheless, Mounger had no record or recollection that Windless had ever attempted to make contact after sentencing. Hrg. Tr. pp. 49:20 to 51:19. Mouger expressed his opinion that there was no basis for appeal but that it would have been in his "pecuniary" interest to pursue such a course by filing an *Anders* brief. Hrg. Tr. pp. 45-46; *see Anders v. State of Cal.*, 386 U.S. 738, 87 S.Ct. 18 L.Ed.2d 493 (1967) (an *Anders* brief is a procedure to allow an appeal at the insistence of a defendant when the attorney may consider it to be frivolous or not warranted).

On cross examination, Windless added that he also told Mounger two or three months prior to sentencing that he wanted to appeal. Hrg. Tr. p.16:11-16. Windless elaborated that on this occasion he told Mounger that "if they were going to career me out . . . I really would very much like to appeal." Hrg. Tr. p.16:15-25. He offered conflicting testimony regarding Mounger's response to this request. Hrg. Tr. pp. 18-19. Windless first indicated that Mounger had no response

---

[7] The Federal Rules of Appellate Procedure allow ten days to perfect an appeal from the date of the entry of a criminal judgment. Fed. R. App. P. 4(b)(1)(A)(I). Judgment was entered on November 7, 2005. Thus, Windless had up to and including November 22, 2005, to timely file a notice of appeal. *See* Fed. R. App. P. 26(a).

13

except to become agitated. Hrg. Tr. p. 18:10-13. He subsequently testified that Mounger never said he would file the appeal. Hrg. Tr. p. 18:14-17. When pressed further, Windless stated "I believe that he did say that he would appeal." Hrg. Tr. p.19:16. Contradicting these statements, Windless also said several times that he never discussed the possibility of appeal. Hrg. Tr. pp. 32:20-23.

Attorney Whit Mounger testified to his thirty-seven years of experience as a criminal defense attorney and that was appointed to represent Windless in this case. Hrg. Tr. p. 40:25. Despite acknowledging that Windless was "very unhappy" about the guideline calculation, Mounger was resolute in his recollection that Windless never asked him to perfect an appeal. Hrg. Tr. pp.51:20-23, 55:4-7, 58:2-6.

*The Applicable Law*

The *Strickland* standard for ineffective assistance of counsel as identified *supra* applies to Windless' claim. The failure to file a notice of appeal is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit. *Roe v. Flores-Ortega*, 528 U.S. 470, 483-86, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). When an attorney fails to file a notice of appeal when requested to do so, the defendant need not demonstrate that he would have been able to raise meritorious issues on appeal. *Id.* at 477-78. Instead, the defendant must only demonstrate that there is a reasonable probability that but for counsel's failure, he would have timely appealed. *Id.* at 484, 486. If the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to an out-of-time appeal. *Tapp*, 491 F.3d at 266; *Perez v. Wainwright*, 640 F.2d 596, 598 (5th Cir. 1981).

*Analysis*

In the case *sub judice*, it is above dispute that no appeal was taken from Windless' sentence.

Accordingly, Windless must demonstrate by a preponderance of the evidence that he did, in fact, timely request Attorney Mounger to perfect an appeal. Based on the testimony presented at the evidentiary hearing as well as the record in this case, Windless has not satisfied his burden of proof.

There were two occasions that Windless allegedly requested an appeal. Taking them out of order, Windless asked Mounger to file an appeal on the day of sentencing but did not ensure his only request was heard. Windless whispered and was not sure Mounger heard the request. Mounger confirmed that on this day he did not hear or understand that Windless wanted to pursue and appeal.

Windless stated that he attempted to contact Mounger several times after sentencing by calling and writing but, without a response, he gave up and proceeded *pro se*. There is no evidence supporting Windless' claim and his assertions are at odds with the record.

Windless' *pro se* motion to withdraw guilty plea was filed on December 13, 2005–approximately four weeks after he was sentenced. Curiously, the motion to withdraw which Windless referred to as an appeal never mentioned or made use of the word "appeal" or that he desired to pursue an appeal. Although the motion referred to Mounger repeatedly, there is not one word regarding the purported requested appeal. Rather, the motion clearly evinces Windless' dissatisfaction with Mounger's assistance. For example, Windless wrote that he was "misled" and "he feel betray [sic] by his attorney."

Given his obvious resentment and distrust, it seems illogical and unlikely that Windless would have sought further advice from Mounger. Indeed, if Windless had actually clearly communicated his desire to appeal and he believed that Mounger was going to file the necessary notice, why would Windless file his own motion essentially lambasting Mounger weeks after the sentencing while an appeal was being pursued? If Windless' story is true, such a course of action

15

would be the legal equivalent of "biting the hand that feeds you." To the point, the claim is nonsensical and inconsistent with the record and Windless' actions.

As for the other request which was allegedly made months before sentencing, Windless stated that he asked Mounger to appeal if he was going to be considered a career offender. First, this is disputed by Mounger who steadfastly maintained he was never asked to perfect an appeal. Secondly, when pressed for details about the conversation, Windless gave conflicting testimony. On cross examination, Windless was asked about Mounger's reaction to the alleged request for an appeal. Windless gave three very different answers. Windless first said there was no response except that Mounger became agitated. Next, Windless admitted that Mounger never said he would file the appeal on this occasion. Continuing the same line of questioning, Windless stated "I believe that he did say that he would appeal." Even Windless was unsure about the alleged conversations and events.

The court understands that these events took place, if at all, several years ago and memories may have faded. However, removing all the extraneous claims and comments, the only evidence available on the issue is Windless' and Mounger's testimony–one man's word against another. In short, Windless' testimony was simply not convincing and certainly did not rise to the level of preponderance of the evidence. Accordingly, the court finds that Windless did not ask Mounger to perfect an appeal, timely or otherwise. The last claim is, thus, without merit.

*D. Conclusion*

For all the foregoing reasons, Windless' motion to vacate will be denied. The claims neither singularly or collectively are sufficient to warrant federal habeas relief.

A final judgment shall issue in accordance with this opinion.

This the 29th day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE